Filed 3/29/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D080920 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BAF1800877) |
| STEPHEN PHILLIP WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, James Stafford Hawkins, Judge. (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Stephen Phillip Wilson of two counts of oral copulation or sexual penetration of a child 10 years or younger. The evidence was overwhelming. In a tape-recorded telephone call, Wilson told his adult son that the victim (C.F.) at age six "was a better kisser than every one of my wives except [one]." During a police interrogation, Wilson admitted that he "kissed [C.F.'s] vagina and her breast area" and "she kissed me in private areas too." In her testimony, C.F. (now 17 years old) described nine years of sexual abuse.

The People also introduced evidence of uncharged sexual offenses that Wilson committed against C.F.'s sister (Sister). On appeal, Wilson contends the judgment should be reversed because in closing argument the prosecutor told the jury it could "presume" from this evidence that he "committed the crimes here."

If "presume" was understood by the jury in its legal sense—"an assumption of fact that the law *requires* to be made from another fact"[1]—this would be a material misstatement of law. Evidence of other sexual offenses merely indicates a defendant's disposition to commit sex crimes. (See *People v. Avila* (2014) 59 Cal.4th 496, 516.) It does not create a presumption in the legal sense.

But "presume" has a much different colloquial meaning. In everyday conversation, "presume" means to expect or to believe—as in Henry Morton Stanley's famous greeting, "Dr. Livingstone, I presume."

Here in the context in which it was said, the jury could reasonably have understood "presume" only in the colloquial sense. There was no prosecutorial error. And even if there were, on this record it was not prejudicial. Accordingly, we affirm the judgment.

---

[1] Evidence Code, section 600, subdivision (a), italics added.

## FACTUAL AND PROCEDURAL BACKGROUND

When C.F. was about two-years-old, her mother married Richard, who was a father-figure to her. Wilson is Richard's father, and someone C.F. knew as "grandpa." At the time, Wilson was in his 60's and 70's, and she looked up to him as an authority figure and "loved" him.

As a young child, C.F. frequently visited Wilson at his trailer park home, sometimes alone and other times with Sister. He groomed C.F. by taking her shopping for new clothes and a manicure. When she was about eight years old, he bought her "thongs from Victoria Secret." This made her feel "special" and "important."

From about age six to 15, C.F. was sexually abused by Wilson. It began with back rubs, but quickly degenerated into touching her vagina. On occasions, Wilson penetrated C.F.'s vagina with his finger, sometimes so aggressively it caused her to bleed. He also orally copulated C.F. "every day" she was there. When C.F. was about nine years old, Wilson forced her to touch his erect penis. Afterwards her hands were "wet."[2]

Wilson similarly molested Sister (C.F.'s sibling), starting when she was five or six years old. He took her out for a manicure, or to buy new clothes. Back at the trailer, it started with back rubs, but he "would keep moving down." On one occasion, he pushed his erect penis against her back.

In 2017, C.F. was visiting her aunt (Wilson's daughter) and told her that he had kissed, touched, and "raped" her. When the aunt confronted

---

[2] C.F. testified that at age 12 she reported Wilson's abuse to her biological father and stepmother, but they did not believe her. She remained silent for several more years, thinking no one would believe her because Wilson was respected in his church and Richard was "really fond of him."

Wilson, he admitted only to kissing, but described it as the "best kissing" he ever had.

This led to a police investigation and search warrant for Wilson's trailer. There, police seized a computer containing 51,000 photographs and several videos. A sampling of 118 photographs introduced at trial depicted children engaged in sex acts, including some involving a two or three year old.

Although Wilson did not testify, his recorded admissions were played for the jury. The first were from a telephone call with his son, Richard. He admitted touching C.F. "[a]ll over," but blamed her for starting it by "passionately kiss[ing]" him.

Wilson made more admissions in a police interrogation. He acknowledged kissing C.F. "passionately, with tongue and all that stuff" many times when she was seven or eight years old. He also confessed that he kissed her "vagina and breast area," and volunteered, "she kissed me in private areas too."

## DISCUSSION

In closing argument, the prosecutor told jurors they should convict based on C.F.'s testimony, especially in light of Wilson's admissions. Then, turning to "supporting evidence of the defendant's guilt," she directed the jury's attention to CALCRIM No. 1191 and "the child porn and [Sister's] testimony." Elaborating, the prosecutor continued:

> "Now you get jury instruction 1191, and what 1191 says is if there's evidence presented that the defendant touched another child in a lewd or lascivious way which you got the instructions for, *then you can presume that he committed the crimes here.*

"We also have what we call evidence of propensity, and in sexual assault cases, we're allowed to use propensity evidence, meaning that because a person did other acts, they're likely to have done the acts here.

"So let's talk about the child porn. . . . [¶] . . . [¶] You can use that child porn to take into account whether or not the defendant did the acts described in [Penal Code section] 288.7, and it makes sense why you can. You can use that, and you should use it because it gives you an insight into the defendant's mind and it substantiates [C.F.'s] testimony about what was going on and what he was doing to her.

"Now, we also have [Sister's] testimony, and again, what [jury instruction] 1190 [*sic*][3] says is that if you believe by a preponderance of the evidence that other sexual acts were committed by the defendant on the other individual, *you can take that into account when you're talking about [C.F.'s] testimony*." (Italics added.)

Wilson's attorney did not object. After the defense closing, prosecutor's rebuttal closing argument, and final instructions to the jury, about 10 minutes remained in the court day. The jury was directed out of the courtroom to select a foreperson. After the alternate jurors left the courtroom, defense counsel stated:

"[T]he People argue that if you found this child pornography, you could presume that the charges were accurate, that you could presume there was guilt here.

"And I don't think there's any presumption with this kind of evidence at all. She did then go on and talk about propensity, and I understand that. But as far as

---

3    CALCRIM No. 1190 states, "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." We assume the prosecutor misspoke and intended to cite CALCRIM No. 1191A, entitled "Evidence of Uncharged Sexual Offense."

5

presuming that the charges are true, you can't do that with this kind of evidence."  [¶] . . . [¶]

"[T]he People said you can presume the truth of the charges before she went into explaining propensity, and I think that is an egregious misstatement of the law.  I think it probably constitutes a mistrial . . . ."

Construing counsel's remarks as a motion for mistrial, the court asked the reporter to find that part of closing argument.  The court went off the record while that was done.  According to the transcript, the next on-the-record colloquy seems to reflect that the mistrial motion was denied:

"[Defense counsel:]  So what I'm saying is that I heard that you can presume he committed the crimes here.  I thought that was referring to the uncharged offenses.  I had a reaction to that.  I thought that that was referring to the charges in this case.

"[The court:]  Okay.  So will you be around tomorrow?

"[Defense counsel:]  Yes, sir.  I'll be on call.  I'll be at work, I'm sure.

"[Prosecutor:]  I'm sorry, Your Honor?  Is the court denying [defense counsel's] motion?

"[The court:]  Yes.

"[Prosecutor:]  Thank you.

"[The court:]  I think he withdrew it.

"[Defense counsel:]  No, I didn't.

"[The court:]  Well, I thought you said—

"[Defense counsel:]  I understand the court's ruling.

6

"[The court:] Yeah. I thought you said—never mind. It's denied."[4]

Wilson's sole contention on appeal is that the court erroneously denied the motion for mistrial because the prosecutor's closing argument led jurors to believe they could conclusively presume the charged offenses occurred based on evidence Wilson committed uncharged sex offenses. Before discussing the merits, we address the Attorney General's contention that the point is forfeited because defense counsel did not object or request a curative admonition immediately after the claimed misconduct occurred.

Generally, an appellate court will not consider whether a prosecutor misstated the law during closing argument unless a contemporaneous objection is made. (See *People v. Steskal* (2021) 11 Cal.5th 332, 360 (*Steskal*).) The reason for this rule is that the trial court should be given an opportunity to correct the error and, if possible, prevent any prejudice by an appropriate curative instruction. (See *People v. Peoples* (2016) 62 Cal.4th 718, 801 (*Peoples*).)

Here, although defense counsel did not object during closing argument, he moved for a mistrial immediately after the jury was sent to select a foreperson and begin deliberations with just 10 minutes remaining in the court day. From an appellate perspective it would have been preferable had Wilson's objection been made before the jury left the courtroom. Still, we conclude the motion for mistrial was sufficient to preserve the claim.

Two Supreme Court cases seem to set the parameters for analysis. In *Steskal*, defense counsel first objected to the prosecutor's claimed

---

[4] It would have been helpful if, once back on the record, the court and/or attorneys had memorialized the off-the-record discussion, or at least the court's reasoning in denying the mistrial motion.

misstatement of law in a motion for mistrial filed the next day (but before the defense had completed its closing remarks). (*Steskal*, *supra*, 11 Cal.5th at p. 360.) The Supreme Court held the motion was sufficient to preserve the claim because the trial court had an opportunity to admonish the jury before it started deliberating. (*Ibid.*) Conversely, in *People v. Adams* (2014) 60 Cal.4th 541 (*Adams*), the court held that a postverdict motion for new trial was insufficient to preserve a like claim because by that point, a curative instruction could not be given. (*Id.* at p. 577.)

The rule we distill is that a claim of prosecutorial misconduct during closing argument may also be preserved if presented in a motion for mistrial made while proceedings are still ongoing and there is a meaningful opportunity for the trial court to cure the error(s) by admonishing the jury. (See *Peoples*, *supra*, 62 Cal.4th at p. 801 [motion for mistrial "put the court on notice that misconduct was alleged in time for the court to instruct the jury and correct any error"].)

The timing of Wilson's motion falls somewhere between *Steskal* and *Adams*. Unlike in *Steskal*, Wilson raised the issue after closing arguments were over and the jury was sent to begin deliberations. But also unlike *Adams*, the motion was made before the jury reached a verdict. Indeed here, the jury could have been brought back into the courtroom for a curative instruction less than 10 minutes after it was sent out to choose a foreperson.

In light of the underlying purpose of the forfeiture rule, this case more closely resembles *Steskal* than it does *Adams*. The timing of defense counsel's objection gave the trial court an opportunity to admonish the jury the same day, and likely before it had conducted any substantive

8

deliberations.[5]  It is a close call, but we conclude the issue is preserved for appeal.

"'"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citation.]  In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements."'"  (*Adams*, *supra*, 60 Cal.4th at p. 577.)  The court must consider the challenged statements in the context of the argument as a whole.  (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159.)

Although the prosecutor's use of the word "presume" was imprecise, Wilson's claim that jurors would have understood it to mean they were *required* to find him guilty if persuaded he also committed the uncharged offenses is not accurate either.  Absent an instruction on the legal meaning of "presume" (and there was none), the jury would reasonably understand it only in the colloquial sense—"to expect or assume especially with confidence."[6]  This everyday meaning was reinforced by the prosecutor's contemporaneous reference to CALCRIM No. 1191, which as given here stated:

> "If you conclude the defendant committed the uncharged act, that conclusion is only one factor for you to consider along with all the other evidence. *It's not sufficient by itself to prove the defendant is guilty of the acts charged.* Remember, the People always have to prove each charge beyond a reasonable doubt."  [¶] . . . [¶]

---

[5]    The jury did not return its verdict until the following day.

[6]    <Https://www.merriam-webster.com/dictionary/presume> [as of Mar. 24, 2023], archived at <https://perma.cc/VTS9-WEN6>.

"If you decide the defendant did commit these uncharged acts, *you may, but you're not required to, conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses*, and based on that decision, also conclude that the defendant was likely to commit and did commit sex acts on a child under 10 years of age as charged in this case. . . . *It's not sufficient by itself to prove the defendant's guilty of the charged sexual offenses. The People, remember, still have to prove each charge beyond a reasonable doubt."*[7]  (Italics added.)

Moreover, even if jurors may have nevertheless understood "presume" in its legal sense, the trial court also instructed, "You must follow the law as I explain it to you, . . . and if you believe the attorneys' comments on the law conflict with these instructions, please follow the instructions."  Jurors are credited with intelligence and common sense.  We "presume they generally understand and follow the instructions."  (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)  It is highly unlikely that based on the prosecutor's use of the word "presume," jurors understood they were required to find Wilson committed the charged offenses merely because they believed he committed the uncharged ones.  In common parlance, "presumed" does not mean that, and the court expressly instructed the jury the noncharged offenses were "not sufficient" to prove guilt of the charged crimes.

In any event, even if error occurred, it was not prejudicial.  Wilson concedes that *People v. Watson* (1956) 46 Cal.2d 818 provides the applicable standard for assessing prejudice.  (*Id.* at p. 836.)  And it is not reasonably probable that he would have obtained a more favorable result absent the error.  Wilson confessed on two separate occasions in recorded statements played for the jury.  Even his appellate counsel is forced to concede that the

---

[7]    Wilson concedes that the jury was correctly instructed on the permissible uses of noncharged crimes evidence.

jury "would probably have given significant weight to those statements" and there was a "formidable body of evidence that the defense had to contend with in this case." That's putting it mildly. " 'A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." ' " (*People v. Saldana* (2018) 19 Cal.App.5th 432, 463.) Moreover, although Wilson speculates that C.F. had a motive to fabricate "as a way of seeking attention," Sister's testimony and the evidence of child pornography gave the jury ample reason to reject that suggestion.

DISPOSITION

The judgment is affirmed.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.